# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                            **Case No. 08-CR-216**

**AARON BURNS**
        **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Aaron Burns pleaded guilty to possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1), and I set the case for sentencing. In imposing sentence, the district court must first calculate the applicable sentencing guideline range, then determine the final sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

## I. GUIDELINES

Because defendant had previously been convicted of a crime of violence and a controlled substance offense, U.S.S.G. § 2K2.1(a)(2) set his base level at 24. Based on his timely guilty plea and expression of remorse, defendant qualified for a 3 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final level of 21. Coupled with his criminal history category of IV, level 21 produces an imprisonment range of 57-71 months.

## II. SECTION 3553(a)

**A.    Sentencing Factors**

In the imposing the final sentence, the court must consider:

    (1)    the nature and circumstances of the offense and the history and characteristics

of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Rather, the court must make an individualized assessment based on the facts presented and, after settling on the appropriate sentence, adequately explain that decision to allow for meaningful review and to promote the perception of fair sentencing. Gall, 128 S. Ct. at 597.

2

**B.    Analysis**

**1.    The Offense**

On June 14, 2008, at about 2:10 a.m., the Milwaukee police department received a call of shots fired outside a bar on the north side of the City.  One of the callers indicated that the suspect was a black male wearing black clothing, and that a green van with sliding doors may be involved.

Officers responding to the area came upon several women fleeing the bar, and they stated that "the guy you're looking for" ran north and was wearing a black shirt.  The officers headed north and noticed a green Dodge Caravan with a sliding middle door.  They saw a man, later identified as Idiamin Davis, bending down on the grass near the van.  Another man, later identified as defendant, was sitting in the front passenger seat and wearing a black shirt.  The officers approached and saw defendant holding a pistol in his lap.  Using his left hand defendant dropped the gun onto the floorboard.  As the officers tried to remove defendant from the van, he broke free and ran.  Officers gave chase, during which defendant dropped to the ground to try to undercut one of the officers, but he was apprehended.

Officers recovered the gun – a .22 caliber pistol with one round in the chamber and five more rounds in a ten round magazine – from the van.  In the area around the bar, officers recovered casing and bullet fragments, including .22 casings. Later ballistics tests showed that one of the casings had been fired from the gun found in the van.

In his version of the offense, defendant claimed that the gun belonged to Davis, and the van to Davis's girlfriend.  He stated that when he got in the van, the gun was on the seat and he just picked it up, then put in on the floor of the van before the police got to the window.

3

Defendant denied firing the gun or knowing who did. He also noted that police recovered a total of seventeen casings or bullet fragments from the area, but only one came from the gun he possessed.

Defendant's explanation did not fit very well with the circumstances surrounding the officers' arrival on the scene, set forth above. The record contained no direct evidence that defendant fired the gun, I agreed, but as a convicted felon, defendant could not lawfully possess firearms under any circumstances.

### 2. The Defendant

Defendant had a serious prior record, including most significantly an attempted armed robbery conviction from 1998, which involved his brandishing a gun and demanding money from another man on the street. Defendant also had convictions/adjudications for receiving stolen property in 2001, possession with intent to deliver cocaine in 2002, and loitering and gambling in 2008.

At age twenty-eight, defendant was the father of five children with three women. He lived with his girlfriend, the mother of three of his children. Neither of them were working, and she received government assistance. He owed about $10,000 in back child support for his other two children, who lived with their mothers, as well as about $2800 for one of the kids with his girlfriend. As these arrears suggested, defendant's employment record was spotty. He had not worked at all since August 2008, even though one of his conditions of pre-trial release in this case was that he seek and maintain employment.[1] He worked for his sister's cleaning business for cash from 2006 to 2008 and in various short-term jobs before that. He dropped

---

[1]He did at sentencing present a certificate of his completion of a program called "soft skills training" in February 2009.

4

out of school, but to his credit earned his HSED while in state prison. Defendant's girlfriend, mother and sister made positive statements about him to the pre-sentence writer, his sister submitted a favorable letter, and various supporters appeared in court for his sentencing. Defendant admitted past drug use, but all of his screens on pre-trial release had been negative. Aside from some minor problems on electronic-monitoring, he complied with his other conditions of pre-trial release as well.

### 3. The Sentence

The guidelines recommended 57-71 months, and I agreed that a substantial prison sentence was needed here. While the record contained no direct evidence that defendant fired the gun, his flight from the officers constituted an aggravating factor. I also had to impose a sentence sufficient to impress upon defendant that he could not involve himself with firearms, even for short periods of time, given his record. His prior sentences of three years or less had not sufficed to deter him.

I did believe that a prison sentence slightly below the range would suffice. Defendant barely fell in criminal history category IV based on the 1 point he received for the receiving stolen property violation.[2] (PSR ¶ 33.) This was a non-criminal ordinance violation, which involved defendant borrowing a car that had been reported stolen. He failed to appear in municipal court to contest the violation, and the court entered judgment by default. I also noted that defendant's prior violent offense was over ten years old, and he committed his last felony in 2001; his more recent brushes with the law had been much less serious, municipal tickets

---

[2]He received 3 criminal history points each for his prior armed robbery and drug offenses. His municipal loitering and gambling violations did not score. See U.S.S.G. § 4A1.2(c).

5

for gambling and loitering in 2008. Finally, I noted that his prior drug conviction involved a very small amount of cocaine, less than 3 grams, yet it served to elevate his base level from 20 to 24 under U.S.S.G. § 2K2.1(a) and to place him in category IV. I concluded that these increases placed more weight on this conviction than its facts could reasonably support. The Sentencing Commission has acknowledged that treating minor drug cases the same as crimes of violence may result in overstatement of the defendant's criminal risk. See U.S. Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004).

In category III, defendant's range would have been 46-57 months. I concluded that this range better characterized the severity of defendant's record and the risk he posed, and that a sentence within that range was sufficient to protect the public. Under all of the circumstances, balancing the aggravating factors of the offense with some of defendant's positive qualities, I found a sentence of 48 months sufficient but not greater than necessary. This sentence varied modestly from the range, and because it was supported by the particular facts of the case it created no unwarranted disparity.[3]

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 48 months. Upon release, I ordered him to serve three years of supervised release. I selected the

---

[3]At sentencing, defendant argued that this case should have been handled in state court, where he presumably would receive a more lenient sentence. Assuming, arguendo, that state/federal disparity is a proper factor for my consideration, defendant presented no evidence of the type of sentence he might have received in state court, and the government offered a persuasive explanation as to why this case warranted federal attention. The case arose out of a shots fired call, the weapon defendant possessed had been fired, and defendant had a prior record involving use of a firearm. The government noted that this was not a case in which law enforcement recovered the gun from defendant's home, pursuant to a warrant, for instance; rather, he possessed the gun outside a bar at 2:00 a.m.

maximum supervision term to ensure that he was monitored, given his record, and that he obtained legitimate employment. As conditions, I ordered him to comply with a program of drug testing and treatment, disclose all requested financial information to the supervising probation officer, and to attend to his child support responsibilities. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 13th day of February, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge